**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------×

JUSTIN BECK,

               *Plaintiff,*

               *v.*

HENSEL PHELPS CONSTRUCTION CO., HENSEL
PHELPS SERVICES, L.L.C., and FRANK DE LEON,

               *Defendants.*

---------------------------------------------------------------------×

**20-CV-06041**

**COMPLAINT**

Plaintiff Justin Beck, by his counsel, Young & Ma LLP, alleges for his Complaint against Defendants Hensel Phelps Construction Co., Hensel Phelps Services, L.L.C., and Frank De Leon, as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Justin Beck ("Plaintiff" or "Justin") seeks damages and costs against Defendants Hensel Phelps Construction Co., Hensel Phelps Services, L.L.C. (collectively, "Hensel Phelps" or the "Company"); and Frank De Leon ("Frank") (collectively, "Defendants") for discriminating against him based on his race, and among other things, subjecting him to a hostile work environment and ultimately terminating him from his employment, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.*; § 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

**JURISDICTION AND VENUE**

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII and Section 1981.

3. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about April 2, 2020.

4. The EEOC issued a Right to Sue Letter on May 6, 2020, which was received by Plaintiff's counsel on May 6, 2020.

5. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims as they are so related to the Title VII and Section 1981 claims that they form part of the same case or controversy.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

**PARTIES**

7. Plaintiff, at all times relevant hereto, was and is a resident of New York County in the State of New York.

8. Upon information and belief, at all times relevant hereto, Defendants Hensel Phelps Construction Co. and Hensel Phelps Services, L.L.C. are and were foreign corporations organized under the laws of the State of Delaware, doing business in New York as construction companies and providing construction services centralized at one major client site, Avenues: The World School at 259 Tenth Avenue, New York, NY 10011.

9. Upon information and belief, Defendant Frank De Leon is an individual residing in New York and is the Daytime Lead Custodian at the Company.

**STATEMENT OF FACTS**

10. Justin has over 13 years of experience working in operations, facilities and security in New York City. Prior to working at Hensel Phelps, he worked at Carnegie Hall, Cathedral of St. John the Divine, and Alliance Bernstein.

11. Justin is a White male who has worked very successfully in operations, facilities and security in the past with all forms of minorities. He speaks Spanish and has never encountered racial discrimination or altercations with minority/Latino colleagues until working for Hensel Phelps.

12. Defendant Hensel Phelps Construction Co. is one of the largest general contractors and construction contractors in the United States with over 2,000 employees.

13. Defendant Hensel Phelps Services, L.L.C. provides construction services to customers throughout the United States, and has over 15 employees.

14. Collectively, Defendant Hensel Phelps Construction Co. and Defendant Hensel Phelps Services, L.L.C. have over 50 employees in New York City, centralized at one major client site, Avenues: The World School at 259 Tenth Avenue, New York, NY 10011. Defendants have several other sites in New York City.

15. Defendant Frank De Leon is the Daytime Lead Custodian at the Company.

16. Justin joined Hensel Phelps on June 26, 2018 and was immediately placed to work at the main site Avenues: The World School at 259 Tenth Avenue, New York, NY 10011.

17. At Hensel Phelps, Justin served as Daytime Custodial Manager & Events Coordinator where he planned, directed and supervised facility management services including building and facility operating systems maintenance, repair and improvement and custodial

services; reviewed and evaluated current operating procedures and personnel practices and established procedures, practice and priorities in keeping with effective operations and cost factors; coordinated building and maintenance activities within the departments to obtain optimum production and utilization of personnel and equipment; conferred with specialists on energy conservation programs and techniques for facilities operations; recommended operating methods and equipment to maximize cost savings, service quality and safety; supervised, trained and evaluated staff directly and through subordinate supervisors and lead workers; and participated in the preparation of the department's budget, monitored budget expenditures, analyzed staffing and expenditures requests, reviewed requests for additional services, prepared contract specifications and negotiated and administered service and construction agreements for maintenance and alteration services and directed reallocation of funding to cover un-projected costs**.**

18.     Justin was also one of the few Caucasian employees on staff that understood and spoke Spanish.

19.     Justin's supervisor, Bruce Devlin ("Bruce"), was aware of Justin's performance and qualifications, having supervised Justin at a previous job. Justin was told that the Avenues site is an unbeatable opportunity. Based on representations of a stable environment and positive balanced workplace, Justin joined Hansel Phelps in June 2018.

20.     However, coming in, Justin was not given the right authority or properly informed of the difficulties with Defendant Frank De Leon ("Frank"), the Daytime Lead Custodian.  Justin was also not properly informed of the power and authority Frank had, as Justin's position was not filled for a while and Frank may have assumed he had a right to Justin's position.  As Frank is both Spanish speaking and also Puerto Rican, he was able to mobilize the rest of the custodial staff (all Latino besides Justin) against Justin.

21. Objectively, Justin was doing a better job than his predecessors than Defendant Frank. Early on, it was commented that the department finances and paperwork got in much better order because Justin was very timely on invoices and paperwork. Justin's boss, the facilities director Bruce Devlin, and the Director of Operations, Ariella Diamond, both knew this. However, Frank apparently had a separate relationship with Jay Spencer ("Jay"), the National Director of Operations. Justin believes Jay wrongfully felt that because it was a largely Latino custodial staff, it was important to liaise only with the most senior Latino staff member, Frank. Justin is also able to speak Spanish and has done very well in predominantly Latino workforces in the past. However, Justin was never given a chance and he did not know that Frank was undermining him to national headquarters for a long time and until it was too late.

22. Justin's positive work performance is evidenced by the fact that at the end of 2018 and early 2019, he received a bonus for his hard work after very short employment.

23. Zac Walker ("Zac"), who works on the Avenues side as the Events manager, told Justin early on that Defendant Frank had been difficult and a problem for the school. This is important client feedback that Justin is not sure Hensel Phelps took seriously.

24. Of the approximately 30 Hensel Phelps employees at Avenues, approximately 10 were Caucasian and they all worked in office departments, while the custodial/operations team of approximately 20 were all Latino except Justin, who is White.

25. When Justin started his employment, Bruce presented an organization chart and reporting structure at the first staff meeting. It was clear that Justin was senior to Defendant Frank as the Daytime Custodian Manager and Events Coordinator, as Frank was a lead custodian to report to Justin.

26.     Defendant Frank never accepted the reporting structure and a few months into Justin's tenure, Frank was yelling at Justin in front of the entire facilities team and written up for this. But the problem persisted.

27.     Defendant Frank refused to talk to Justin and worked directly with Zac, who objected to this. Frank operated like Justin did not exist and acted as if he were holding Justin's role. Frank also talked directly to Bruce and did not go through Justin as required. It was clear that Frank had a problem with Justin and it started from the moment Justin walked in, making it clear it had to do with Justin's race.

28.     When Justin and Defendant Frank were in the same room, Frank turned his back to Justin. If Justin asked Frank a direct question directly, Frank would slightly turn his head, nod, and then look away.

29.     Defendant Frank had prior felony and criminal records and served time in jail, a fact that was never used against him in employment. However, he was allowed to continue his aggressive and violent tendencies, making the workplace hostile and divisive. He was comfortable dividing people racially and speaking in Spanish when he wanted to alienate Justin. He also treated men and women disparately. His violent shouting and aggressive conduct were very hard for some Latina female employees.

30.     As Justin can also understand and speak Spanish, it was clear Justin was isolated and excluded from Defendant Frank's conversations and attention merely because Justin is White.

31.     As discussed, Defendant Frank spoke Spanish at work. He directed all the daytime custodians and operations employees in Spanish. The nighttime custodial manager was also Latino and Spanish speaking.

32.     During staff meetings after Justin gave a directive, Defendant Frank, in front of Justin, would give a different direction in Spanish saying something to the equivalent of, "Let's actually do it my way/this way instead."  At some point, Frank learned Justin could understand Spanish so he would give those directions with his voice lowered and muttering so Justin could not hear.  Justin reported these incidents very precisely to Bruce.  Bruce and Justin had lunch together every day so Justin made this, as well as the race discrimination, very clear.  Bruce always just said, "I'll speak to him," and did not raise the issue with Human Resources even though it was a race discrimination complaint.  Justin felt he followed procedures by raising the race discrimination issue directly to his boss.

33.     Because Defendant Frank was not properly coached by Bruce or Human Resources, dangerous things started to happen.  Frank would ask custodians to come into work and accrue overtime, creating budgetary problems with the number of unapproved overtime hours (which obviously had to be paid to avoid dangerous wage and hour claims).  Justin reported that Frank would not tell Justin about job completions.  Bruce either did not handle it at all or he handled Justin's race discrimination and other complaints in a way that Justin suffered retaliation and was ultimately terminated.

34.     Because Defendant Frank was not communicating with Justin (his boss), and Justin's boss could not make him do so, Justin would have to just correct Frank's work when it was done wrong to avoid confrontation.  This seemed to anger Frank more.

35.     Towards the end of 2018, a Latino employee, Francisco, who was close to Defendant Frank reported to him that Justin had sent a private joke to him.  Bruce had asked Justin to write up Francisco's family member who works for the Company, and Francisco was angry with Justin.  Frank took a private message Justin sent to Francisco and publicized it to the whole group

to undermine Justin.  Meanwhile, Justin had never utilized Frank's criminal records, his long history of write-ups, his excessive absences or his abusive treatment of female employees against him.

36.     On May 20, 2019, Justin was given a Performance Action Plan by Jay in headquarters, who is close to Defendant Frank.  This happened because Justin's legitimate complaints and race discrimination reports were not reported up the chain and Frank had a separate relationship with Jay.  Jay felt that Justin had too much time in the office area (where Justin was doing great paperwork that his predecessor and Frank could not do) and Justin was not out on the floor enough.  However, it was not properly communicated to headquarters that Justin could not be on the floor as Frank completely refused to work and would direct all Latino employees not to work if Justin were there.  Frank could not stand the sight of Justin and was willing to hurt the Company's interests just to be hostile to Justin.

37.     Justin also often had to pick up the slack of Edith Alicea (also Latina) when she made payroll and timesheet mistakes.  Therefore, Justin had obligations both in the office and on the floor.  Justin would have had no issues putting in even more hours to do everything, but the main issue was that the race discrimination and hostility on the floor made it impossible and inefficient for Justin to be more frequently on the floor.

38.     It is important to note that prior to this Performance Action Plan, Justin had sent a really direct text confirming previous verbal reports to Bruce stating, "I am officially going on record to request that you give Mr. De Leon a verbal warning for repeatedly not following my directives. He does not respect my authority, and this has to be nipped in the bud before you go to Florida." Justin anticipated issues would arise when Bruce was gone on vacation and that was in fact the time Justin was terminated.

39. After Bruce went on vacation, there was one day the night custodial manager Giovanni Penafor-Perez (Latino) was late for his evening shift and Justin had to deal with a complaint between Kyle Jenkins and Thonell Robinson on his staff. As it was a violent altercation, and Justin is the type of manager that follows Human Resources policies and procedures, he contacted HR and they asked for documentation and a photo of the sign out sheet since it was a dispute about a sign out sheet for the large cleaning machines. It seemed Human Resources was angry at Justin for reporting through proper channels. They misread that Justin was a problem because so many of the Latino managers and employees just do not accurately report the real employee issues. They were always making dangerous decisions without authorization. On numerous occasions Justin started his day shift with the location in a poor state. But Giovanni was an accepted Latino manager and he was never admonished.

40. On June 6, 2019, Justin was walking the floor of the building 536 with Gladys Semidey ("Gladys") (Latina AMI employee). They were doing a mock walk through in preparation of building inspection. With elementary students on the floor, and in a school that advertises foreign culture collaboration and alliances between people of different races and languages, Defendant Frank shouted at them "culo besando", which means ass-kisser. As some of the students speak Spanish, they can also understand what this means. Since this was done while Bruce was on vacation, and Justin had previously reported all similar incidents to his boss, Justin took the proper course of action and informed HR – Toby Rees – at Hensel Phelps.

41. Ms. Rees did not see this as an act of obvious racism, defiance and subordination like she should have. Instead, she said that Gladys had to report the incident herself. Justin was making a legitimate discrimination complaint and had been consistently making them to his direct boss. It was not his obligation to force other witnesses to make their own complaints. Nor could

Justin control whether Defendant Frank was threatening them in Spanish and privately outside Justin's presence. It was an issue that HR had an obligation to investigate regardless of the other witnesses that came forward. Gladys had expressed to Justin that she is incredibly afraid of Frank.

42. Justin was terminated 2 days after his final complaint of race discrimination. He was terminated the day Bruce returned from vacation. Justin's prediction of issues that would arise in Bruce's absence came true as well as Justin's warnings that adverse actions will happen if Bruce didn't handle things properly before leaving.

43. Justin was forced to endure hatred, unfairness, and reprehensible behavior at Hensel Phelps. He never had a blemish in his career in the last 13 years, and now given the methodology of termination and timing, Justin has permanent impacts in his career and continuing emotional distress.

44. Management is fully aware of Defendant Frank's actions and discriminatory motives but made no effort to change the hostile and deeply discriminatory work environment although they have the authority to do so.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Race Discrimination in Violation of Title VII
### (Against Defendant Hensel Phelps Construction Co. and
### Defendant Hensel Phelps Services, L.L.C.)

45. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

46. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of Defendant Hensel Phelps Construction Co. and Defendant Hensel Phelps Services, L.L.C.

47. Defendant Hensel Phelps Construction Co. and Defendant Hensel Phelps Services, L.L.C. were and are an employer within the meaning of Title VII.

48. At all times relevant to this case, Plaintiff was and is a White male, and is a member of protected classes within the meaning of Title VII.

49. At all times, Defendant Hensel Phelps Construction Co. and Defendant Hensel Phelps Services, L.L.C. were aware of Plaintiff's race.

50. Defendant Hensel Phelps Construction Co. and Defendant Hensel Phelps Services, L.L.C. engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's race in the manner described in the Statement of Facts.

51. Ultimately, Plaintiff was terminated by Defendants due to his race.

52. As a direct and proximate result of Defendant Hensel Phelps Construction Co. and Defendant Hensel Phelps Services, L.L.C.'s unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, loss of salary, and continued advancement in his career. Plaintiff will also have suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience and other non-pecuniary losses.

53. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish and lasting embarrassment and humiliation.

54. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Defendants under Title VII.

**SECOND CAUSE OF ACTION**
**Race Discrimination in Violation of New York City Human Rights Law**
**(Against All Defendants)**

55. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

56. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

57. At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

58. At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

59. At all times relevant to this case, Plaintiff was and is a White male, and is a member of protected classes within the meaning of NYCHRL.

60. At all times, Defendants were aware of Plaintiff's race.

61. Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's race in the manner described in the Statement of Facts.

62. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

63. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

64. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

65. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost bonuses; and (vi) attorney's fees and costs.

66. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiffs' good name and reputation, emotional distress, mental anguish, emotional pain and suffering, and lasting embarrassment and humiliation.

67. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

## THIRD CAUSE OF ACTION
### Race Discrimination in Violation of New York State Human Rights Law
### (Against All Defendants)

68. Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

69. This claim is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

70. At all relevant times, Defendants were and are employers within the meaning of the NYSHRL.

71. At all relevant times, Plaintiff was and is an employee within the meaning of the NYSHRL.

72. At all times relevant to this case, Plaintiff was and is a White male, and is a member of protected classes within the meaning of NYSHRL.

73. At all times, Defendants were aware of Plaintiff's race.

74. Defendants engaged in unlawful employment practices prohibited by NYSHRL because of Plaintiff's race in the manner described in the Statement of Facts.

75. Ultimately, Plaintiff was terminated by Defendants due to his race.

76. Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

77. Defendants are also individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e.g., NYSHRL § 296(1) and § 296(6).

78. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

79. Plaintiff's damages include financial loss, loss of employment opportunities, damage to his career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

80. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

### FOURTH CAUSE OF ACTION
### Wrongful Termination in Violation of Section 1981
### (Against All Defendants)

81. Plaintiff repeats and realleges the allegations in the Complaint as if fully set forth herein.

82. Section 1981 prohibits employers from discriminating against an employee on the basis of race.

83. Defendants unlawfully terminated Plaintiff because of his race.

84. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

85. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### FIFTH CAUSE OF ACTION
### Retaliation and Hostile Work Environment arising under
### Title VII, NYSHRL, and NYCHRL
### (Against All Defendants)

86. Plaintiff repeats and realleges the allegations in the Complaint as if fully set forth herein.

87. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Section(s) 2000e et seq., New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. Sections 290 et seq., and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code Sections 8-101 et seq. for relief based upon the unlawful employment practices of the above-named Defendants.

88. Defendants engaged in unlawful employment practices prohibited by Title VII, NYSHRL, and NYCHRL.

89. Plaintiff complained about Defendants' misconduct to the HR department as specifically outlined in the Statement of Material Facts and previous paragraphs.

90. In response to Plaintiff's complaints, Defendants retaliated against him as outlined in detail in the Statement of Material Facts.

91. Defendants contributed to the harassment, hostile work environment and retaliation; were aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or were complicit in the misconduct.

92. Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally, state and city protected rights.

93. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, raises and equal compensation. Plaintiff has also suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience, and other non-pecuniary losses.

94. As a further direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, and lasting embarrassment and humiliation.

95. As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.

96. Plaintiff's damages include financial loss, loss of employment opportunities, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

97. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, interest, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendants under Title VII, NYSHRL, and NYCHRL.

## JURY DEMAND

98. Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

B. Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C. Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits in the amount of the wages it is determined that the Plaintiff lost as a result of the Defendants' unlawful and discriminatory conduct, together with interest;

D. Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, and pain and suffering, together with interest;

E.      Award the Plaintiff punitive damages;

F.      Award the Plaintiff liquidated damages;

G.      Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the court deems appropriate to be determined at trial.

Dated:    New York, New York
             August 3, 2020

By: _____
Tiffany Ma, Esq.
Young & Ma LLP
575 Lexington Avenue, 4th Floor
New York, NY 10022
T: (212) 971-9773
F: (212) 600-2301
tma@youngandma.com

*Counsel for Plaintiff Justin Beck*